**524**

Spyridon GOUDINOS, Lorenzo Nieto Cremades, Christos Barcas, Andronas Panagiotis, Angel Figueirido, Georgios Spathis, Mihalitsanos Periclis, Libellants,

v.

THE SS RUTH ANN, her engines, boilers, tackles, appliances, appurtenances, furnishings, etc., Respondents.

Angel Vargas RUIZ, Libellant,

v.

THE SS RUTH ANN, her engines, boilers, tackles, appliances, appurtenances, furnishings, etc., Respondent.

Nos. 13–60, 14–60.

United States District Court
D. Puerto Rico,
San Juan Division.
April 11, 1961.

Nachman & Feldstein, San Juan, P. R., for libellants.

Isaiad Rodriguez Moreno, San Juan, P. R., for respondent.

RUIZ-NAZARIO, District Judge.

The SS Ruth Ann arrived at the Port of San Juan on October 29, 1960, under the circumstances set forth in detail in the Memorandum of the Court in Admiralty 12–60, filed on April 4, 1961, Banco Para El, etc. v. P & E Shipping Corp., D.C., 192 F.Supp. 607.

On November 4, 1960, the vessel was attached by libellant in Admiralty 12–60. On December 1, 1960, the present libellants, seamen on the SS Ruth Ann, filed their libel in rem against the ship for wages, overtime and the penalty wages provided in 46 U.S.C.A. § 596, alleging that libellants had demanded payment of wages for October and November 1960 and for overtime accrued during October 1960.

Pursuant to a stipulation filed on January 18, 1960, the Master paid libellants straight wages, less advances, for the months of October and November 1960.

Although these seamen remained aboard the vessel after its arrest on November 4, 1960 and some of them performed certain duties aboard it, no lien in admiralty attached for wages and overtime accrued after the vessel was arrested. As stated in The Esteban de Antunano, C., 31 F. 920, at page 924, "she went into the custody of the law, and her contemplated voyage was broken up and abandoned, and thereby the authority of her owners, and of their agents, the master and ship's husband, to thereafter affect the ship by any conduct or contract to result in a lien of the ship, was ended. By the seizure all persons were notified of the change of control and possession. While the ship was in the custody of the law, it is doubtful whether on account, or for any service (except, perhaps, for salvage, or through a collision,) any lien could arise on the ship; certainly not without the express authority of the court having the property in possession". See, also, Old Point Fish Co. v. Haywood, 4 Cir., 109 F.2d 703, and cases cited therein.

■■ As it does not appear from the record that any application was ever made to this court for authority to continue to employ libellants subsequently to the vessel's arrest in Adm. No. 12–60, all claims by these seamen in Adm. No. 13–60 and No. 14–60 will be dismissed with respect to wages, overtime and penalty wages allegedly accruing after November 4, 1960. With respect to the period from October 29, 1960 to November 4, 1960, as (1) the cargo was not discharged, and (2) the seamen were not discharged until November 4, 1960, the ship is not liable for penalty wages. 46 U.S.C.A. § 596. Therefore, the entire claim for penalty wages will be dismissed.

Turning now to the overtime for October 1960, upon which the parties are more or less in agreement, I find that libellants worked the following number of hours overtime and are entitled to the following overtime wages:

| | | | | |
|---|---|---|---|---|
| Angel Figueirido | 152 | hours at $0.35 | $53.20 | |
| Spyridon Goudinos | 92 | " at 0.60 | 55.20 | |
| Georgios Spathis | 220 | " at 0.40 | 88.00 | |
| Mihalitsanos Periclis | 180 | " at 0.35 | 63.00 | |
| Angel Vargas Ruiz | 110 | " at 0.51 | 56.10 | |
| Andronas Panagiotis | 150 | " at 0.35 | 52.50 | |
| Christos Barcas | 61 | " at 0.40 | 24.40 plus $20.00 | |
| | | cleaning holds at Detroit. | | |
| Lorenzo Nieto | 75 | hours at 0.35 | 26.25 plus $20.00 | |
| | | cleaning holds at Detroit. | | |

———◆———

■ A word of explanation is in order respecting the overtime rate of Angel Vargas Ruiz. According to the ship's articles he agreed to a monthly wage of $55, plus $10 overtime. He testified that he signed the articles at sea and that he only signed for what is patently an absurd and arbitrary overtime rate of compensation because the master informed him that if he did *not sign*, he would be considered a stowaway.

It is precisely this sort of practice by masters vis a vis their crewmen, who as Vargas, are sometimes ignorant, improvident, feckless men that has moved courts of admiralty, from time immemorial, to adopt seamen as wards of the admiralty. I have therefore ignored the absurd ten dollars monthly overtime stated in the Articles, and on the basis of a regular rate of pay of thirty four cents per hour, have awarded Angel Var-

gas Ruiz, who in fact did not validly contract for any overtime rate, as did his fellows in the ships crew, overtime at the rate of 1½ his regular rate of pay.

The proctor for libellants is hereby directed to prepare findings of fact, conclusions of law and a formal decree in conformity with this memorandum.